I'm sorry, why don't we call the case first? 15-0109, Rachel Purpura v, Advocated Health Hospitals Corp. Good morning, Advocates to Court. I am Lynn Plumduffy and I'm here on behalf of the plaintiff, Rachel Purpura, Special Administrator at the estate of deceased Richard Purpura. I'm here on behalf of Advocates Health Suburban Hospital. Good morning. Our clock is in a strange spot because we had our electricity turned off this weekend, but we will do our best to allocate 15 minutes per side. If the appellant would like a few minutes for rebuttal, that would be fine. I assume you'd like to reserve a minute. And we'll do our best to stick to the time, but we can be flexible. And let's go ahead and get started. Good morning. May it please the Court. Counsel. Today we are here to discuss statutory privileges under the Medical Studies Act. Commissioner Purpura, let me cut right to the chase. Absolutely. De novo or abusive discretion? De novo. That was my first issue. And I think it's a very important issue for this Court to consider. It's de novo because we're considering a matter of law, whether or not the privilege applies. So if he goes through the documents and makes findings of whether the privilege applies or not, wouldn't that take it out of de novo? It would take it out of de novo if there was a finding that the documents in question were not part of the peer review process. There is no such finding in this case, specifically on November 12th of 2015. That's my other question. Because there is not specific findings in this, do we even have an adequate record with which to decide the privilege applies or doesn't apply in the judge area? Yes, you do. Again, because of how he entered his order saying that the privilege does not exist, is not found to be privileged under the Medical Studies Act, that's a question of law as to whether or not the documents fall under the purview of the Medical Studies Act. So then what would be the question of fact? There is no question of fact. Give me a scenario where it would. If he found, for instance, that a certain series of documents were not part of the peer review process. So you're saying anything that they look at in the peer review process other than his medical records, I assume? You're not claiming that if they look at his medical records, he can't have those either, right? He cannot have them. The plaintiff cannot have those records vis-a-vis something that was considered by the peer review committee. Certainly he's entitled to those records. Otherwise, within the normal course of discovery... Right, but I'm saying that anything that he would be entitled to normally, just because you look at it in peer review, doesn't suddenly make it privileged, correct? For example, there's some documents in there with regard to his blood gases, with regards to nursing notations. Those he's all entitled to, correct? The plaintiff, Rachel Papua, has those documents. She has all of Richard Papua's medical records. You're saying, your argument is that because this peer review committee considered them in their process of trying to improve medical... Patient care. That those, the ones you focused on, or that were pulled for your meetings, are not subject to disclosure? That's absolutely correct, Your Honor. Well, let me ask you this. There's a suggestion in the brief that interrogatories were answered in which there was a statement that no hearing regarding morbidity or mortality was held. No conversations were held with any person regarding the care provided, other than as documented in the medical records. No documents were being withheld from discovery, pursuant to a claim of privilege. And no one had knowledge of the care complained of, other than as referenced. And then there's a record citation, C3C6 to C371. Now, you don't respond to this at all in your reply brief. And I'm just wondering, why didn't you reply? And was that something that bothered the trial court in this case, that interrogatories suggested there was no peer review process, and then all of a sudden, there was? There's a number of questions there, Justice. I'll try to answer them. Shame on me for not addressing it in the reply brief. I will concede that. Clearly, I should have. As to what happened during the course of the litigation in this matter, I think that there was information that was not initially, the counsel was not privy of, didn't realize that there had been a peer review process that had occurred. They did more digging. They then found that there was, there were some questions that were asked during depositions, which resulted in the following activity vis-a-vis motions to compel. So it became apparent during the depositions that the doctors were aware that there had been a peer review process, and then the attorneys were also objecting to some of those questions based on privilege? Correct. Okay. Well, what is it, so you're just saying it was like a mis, the attorney was not aware? It might have been the client wasn't even aware at that time, because clearly the client signed or verified the interrogatory answer. So I think it was discovered in the midst of litigation. Unfortunate that it wasn't discovered earlier, but that happens sometimes. Was there any type of hearing? We don't have a transcript. There was no hearing. So all we have is the court's one paragraph order saying these are privileged, these are not, these are privileged. So my question is, how is that sufficient for us to review it? We don't know what the basis of his findings were. No, you don't. You know that he found as a matter of law that the documents were not privileged. How do you know that? Because that's what he says in his order. That would be a good indication. Yeah, that's what he says in his order. If the order had gone further and said, I don't think that I have a finding of fact that these documents were not part of the peer review process, then it might be a little more difficult because there isn't a hearing transcript discussing how he reached those findings of fact, which would make it more difficult to prove that his decision was a manifest abuse of discretion. So your position is... It was against the immanifest weight of the evidence, sorry. So your position is it really is somewhat irrelevant what his findings were and why things were privileged or not privileged because these were all documents used in the peer review process and therefore, as a matter of law, they are privileged and you don't need to go through them. I'm not sure I would say irrelevant. He did indicate that they were not privileged. So it's in this court's opportunity to look at what was available, what is in the record, which is privilege log, an affidavit, and the documents themselves. That was my other question. The affidavit doesn't come until motion to reconsider. How is that appropriate? That suddenly he makes a decision and then all of a sudden you're forthcoming with the affidavit and why the privilege applies. Fair question. Thank you. I look at the July 9, 2015 order and in that order, the judge says that Advocate South Suburban Hospital shall produce a privilege log itemizing documents that claim to be privileged under the Medical Studies Act. Did it then produce the privilege log? The privilege log, yes, was produced in October of 2015 with the documents. Before that, did he have another order about discovery? About the possibility of privilege information that wasn't forthcoming? Not to my recollection, no. So this was the first thing where he said, give me a privilege log? Yes. Okay, so then he looked at the privilege log, he looked at the documents in camera. Correct. And then it was when, after he said these do not, they are not privileged under the Medical Studies Act. Correct. Then you filed your motion for reconsideration. Correct. Then the affidavit of Ms. Stern? Ms. Stern, yes. Comes in. All right. And then he said, what? Motion to reconsider is denied. Yeah, he said motion to reconsider denied on December 3rd. What do you allow to bring to the court's attention if it's not a motion to reconsider? What are those three things? Generally, in most motions to reconsider, it's new facts or it's an error of law. However, in most medical... Error of law? Excuse me? Isn't there one more prong? And of course, you're going to argue both of those apply. But isn't there one more for a motion to reconsider? I don't know. But either way, go ahead. Okay. In Medical Studies Act cases, it seems to happen a little bit differently. And it's never really been addressed as to if it's proprietary or not. But here, what counsel was doing was following the direction, the clear order of the court. I want privilege law and I want the documents. So you decided to... Okay, judge, this is what you want, this is what we'll give you. Then, unfortunately, we get an order that is not favorable to our client and say, well, we need more clarification here. So we're going to provide this affidavit. Okay. And that's happened... Yeah. Okay, so I think you're explaining that. He had the in-camera inspection prior to the motion to reconsider. Correct? Correct. All right. Okay. Counsel, if we're talking about the journal articles... Yes. Doesn't... Under the case laws, I'm not sure we have a Supreme Court case on this, but at least under the appellate case law, doesn't the circumstances surrounding the medical journals, specifically whether they were, you know, a peer review process, which I think is the Anderson case, or maybe other cases where there wasn't that specific... Yeah. And doesn't that make a difference in whether the journal articles are subject to privilege or not? It doesn't make a difference as to how they were gathered, why they were gathered, and then used by the, in this case, the Root Cause Analysis Committee. I mean, if we don't have a factual finding on this, how are we supposed to make the distinction between a case like Anderson and a case like Chicago Trust or some of these other cases? Well, what we have are the privilege log and the affidavit, and I think that those two documents, sufficiently with enough clarity, indicate why those documents were gathered, and then they were used in specific meetings of the Root Cause Committee for their analysis as to whether or not there were changes that they might recommend. How do we distinguish between recommendations and results? Results would be the change of a policy, for instance. Here we have a series of documents discussing and redlining certain documents indicating that there was a suggestion by the Root Cause Committee that these are changes that might be considered. Were there any requests for recommendations after, or did this kind of stop because of the state regarding this issue? Did it ever come about that there might have been recommendations, I guess is what I'm asking? Or you're not that far? Yeah, within the documents we're providing, there were a series of documents, I think it's... Are there some recommendations? 221 through 248 of the privilege base number, there were recommendations. Oh, I'm sorry, I misspoke. There's nothing in there to indicate any results? No results, no, no results. And generally speaking, policy provisions of the hospital have been held to be privileged, right? Some of these things you're claiming a privilege on were policies. Yes, the policies that were gathered for purposes of analysis by the Root Cause. And the literature has been held to be privileged if it was actually sought out or acquired for purposes of the peer review, or in this case, the Root Cause. Root Cause Analysis Committee, yes. And Ms. Tern does, in her affidavit, explain that all of those documents, the medical literature, medical records, the hospital policies and forms were all gathered after the Root Cause Analysis Committee was formed on April 13th of 2011, and then were used within the following meetings of the subgroups of the Root Cause Analysis Committee. And she says that they were gathered, all of these documents were gathered for furtherance of this Root Cause Analysis Committee. Correct. Correct, she does. So, you've got something like a medical journal article, which is, you know, just a law review article, except it's written by doctors about medical things. Except more boring. Probably more boring, if that's possible. Published in books, sitting on the shelves of the AMA and other places online, maybe behind a firewall, maybe you have to subscribe. But anybody, if they're willing maybe to subscribe, could access this. These are previously prepared articles, having nothing to do with this case, or with this hospital, or anything, certainly with this peer review analysis. It's independently, previously generated. And you're saying the mere fact that the committee then said, we want to look at that, it becomes privileged. The fact that they were looking at it. Privileged vis-a-vis a request for any documents that the Peer Review Committee looked at. Right, I'm sorry, yeah. Otherwise, they could just find it themselves. They could even ask for them. I understand. But here's what I'm getting at. Is there any limitation on this idea, that previously generated information, the moment the committee says, we want to look at that? Is that the end of the discussion? No, I think that is the end of the discussion. It's looking at the statute itself. It indicates that all information used in the course of internal quality control, or medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged. But the case law that says that previously drafted information, previously prepared information, is not subject to the act. It's a bit confusing. And I think the case law has evolved over time. And I would suggest that what may have occurred in cases that were occurring 15 years ago or so, is that it wasn't considered that the documents might be unprivileged in another scenario. They were focused simply on whether or not the documents were used within the peer review process or not. Are there cases that clearly say that if these journals or treatises or whatever were sought out, it's like an after-the-fact thing, that they would absolutely be discoverable? Your argument is that they were requested, they were sought out in the course of the root analysis? Correct. Right. Within the confines of its existence, within the committee's existence, is they were requested, they were researched, they were gathered, they were brought before, they were requested by members. Maybe there was a problem in the trial court because you had all these sworn interrogatories saying there was never any peer review or root whatever you're calling it. What's it called again? The root cause analysis. And that was problematic, I think, for the trial judge. And then all of a sudden there's an affidavit. Now, this is a sworn affidavit. She indicates that there was a root root cause analysis committee formed. She gives the dates. She swears to the dates. She indicates what was obtained for that purpose. And basically that's how it was presented to the court. In the motion to reconsider, yes. Is there another case besides Anderson that says that medical studies So the Kovalovich case discusses what went on in Anderson and I think has a pretty good discussion of that. It's a 2012 case out of the 2nd District. Same result? I mean It was not the same result. Kovalovich did not find that there was a privilege under the Medical Studies Act but there was a discussion of what occurred in Anderson and why the medical literature was privileged in Anderson. So there are specific documents in this case that constitute notes and recommendations of the Root Cause Analysis Committee and I would direct the court's attention to pages 160-161 and 221-248 of the privileged date stamped documents that were filed under seal. Then we have the medical journal articles that we've spent a lot of time discussing here today that should be privileged according to Anderson and Kovalovich. Those are at 161-149 and 162-213 What is left is the hospital policies and forms And that's not a language in the that's not an actual subject in the statute is it? The statute mentions all information so I think it falls under all information but it's not specifically Isolated But to be forced to produce those hospital policies and forms would expose the mechanisms of the Root Cause Analysis Committee would expose their thought processes and what occurred there and to do so would then I would suggest would chill the process of that internal self-evaluation committee We're talking about pre-existing hospital policies? So nothing would stop the plaintiff from requesting that discovery otherwise? No, and they have certain policies for instance the sleep apnea policy they have You're just saying within the confines of asking the question what did the Root Cause Analysis Group consider its privilege? That's correct, Your Honor. Because they might change some policies They could change the policies and the change policies would also be discoverable And any recommendations for example with people that have sleep apnea that there might be some indication there that there was an issue The recommendations would not be produced No, the results And policy could be changed That would be a result So if the plaintiff asked for what was the policy on for example sleep apnea prior to the incident and what's the policy today they'd be entitled to that, correct? Yes, they would not be privileged under the Medical Studies Act certainly So based upon the foregoing I would ask this Court to reverse the Circuit Court's orders forcing an advocate to produce these documents that should be privileged under the Medical Studies Act I'll reserve the rest of my time for rebuttal Thank you Again, may it please the Court Opposing counsel, I'm Lynn Lafayette I'm here on behalf of the plaintiff Unsurprisingly, I'm asking that the order that Judge Callahan entered be affirmed I believe that the standard that's applicable for this Court's review is not de novo I believe that there is no reasonable way to suggest that Judge Callahan's determination was other than factual How do we know that when his order doesn't really tell us anything other than he said that these materials are not privileged under the Medical Studies Act? We know that for a number of reasons The primary reason is that Judge Callahan did not order that all of the documents that were submitted Right, there was 250 pages and he allowed 214 pages to be developed That is correct, and he reviewed those documents and he necessarily and logically made the conclusion that advocate had not met its burden of showing that the documents were for quality assurance purposes and only for quality assurance purposes And that's another point that's omitted from advocate's discussion They point out that the purpose of the Medical Studies Act is not to help plaintiffs win their cases The Court is also aware that the purpose of the Medical Studies Act is not to help hospitals insulate themselves from liability There's a balance and the balance has to be the law that's well established that the burden is on the hospital to show that the privilege applies and included in that burden is showing not only that the materials were created generated, used, initiated for the purposes of quality assurance but only for that purpose What Judge Callahan had before him when he ruled on November 12, 2015 Wouldn't it have made it a little bit easier then for us to determine that he was using his discretion had he said something along the lines that these obviously weren't generated for quality control or to improve mortality and morbidity I mean, wouldn't that have made it clear that he actually had some discretion in what he was doing I suspect that many orders that come before the Court could have been made clearer I mean, if you look at some of the cases there's certainly some form of discussion from the trial court so that gives the appellate court an opportunity to review based on the reasoning. Reasoning always helps I agree. And when there are specifics in terms of what's been provided by the defendant to the trial court in order to support its burden of showing privilege then naturally the trial court is going to be in a position and inclined to talk about those specifics What happened here is that initially as the panel has already noted I can tell from the questions Advocate denied that any such documents existed and they denied that there was a root what is it? I don't know what I'm saying RCA. I don't know why I'm having a problem What is the root? It's a different name for quality assurance It's a different name for morbidity and mortality They didn't review. Correct. And instead of following well-established and very logical rules particularly in this situation, Advocate simply denied that it had any such documents. We then proceeded to do very substantial oral discovery and discovered that in fact there were 250 pages of such documents and there was a prior order that Advocate successfully convinced Judge Callahan a privilege applied when it was initially ordered to amend this mess that they made by providing summaries of statements. Judge Callahan walked back that order and he ordered them to do what they should have done in the first place provide a privilege law and submit documents for in-camera inspection. Advocate didn't object to doing that It was clearly Advocate's opportunity and burden even before that but certainly at that point to provide an affidavit that was not only timely but that showed that the privilege defied. He originally requested all summaries of conversations between the nurse and the doctor but when they asserted the attorney-client privilege didn't Judge Callahan back off that one as well? He did. So that's not even an issue. I don't contest that we're here to talk about the Medical Studies Act but the issue is did Advocate meet its burden of showing to Judge Callahan that the privilege applied and even in that untimely and improper motion the motion to reconsider was improper because it was not based on one of the three prongs for a proper motion for reconsideration there was no change in the law, there was no misapplication of existing case law that Advocate pointed to and there was certainly no new evidence that was not previously available. So you're arguing her affidavit was not new evidence that was previously available. It was available. She could have done it before. Don't we have to accept the fact that Ms. Stern filed an affidavit, swore to the truth of it said there was a root cause analysis committee, it began April 28th there were four meetings thereafter in May and the things that are in the privilege laws were those things that that root cause committee actually requested sought out and was dispersed among its members. My response to that, Your Honor would be that the affidavit is not only conclusory but it's insufficient because it does not establish that the documents were used and this is Advocate's burden only for the purposes of quality assurance. There's no information about what the use of the documents was prior to when the committee gathered it and we all know that the committee Are you saying her affidavit doesn't suggest that all of the items in the privilege law were not sought after, reviewed, considered on the given dates by the committee? Are you suggesting she didn't really say that in her affidavit? It certainly concludes that the documents were used as counsel said repeatedly in the process of quality assurance and that they were gathered It needs to say more? What do you think it has to say? I think it has to say and we have cases that are cited in our brief that point out the level of detail. I think it has to say at a bare minimum what the purpose, what the use was of the documents before they were gathered by the committee because we all know that the committee can't simply say everything is now being gathered by the committee, ergo everything is privileged. That would, as the case law says, as Roach says, lie with the law. So what does she have to say? It has to say that the purpose was that they were generated primarily for, solely for, or that these were all gathered strictly for the root cause analysis. I think it not only has to say that it was primarily, that it was only for not primarily for. But there are documents that they looked at like his medical records, his blood gases, the nurse's notes there are things that they looked at that you're clearly entitled to. You're just not entitled to and pursuant to the Medical Studies Act, I believe is the advocate's argument. Well, and counsel has indicated several points, not only with respect to the records but to the policies that we already have them. The fact of the matter is I'm standing before the court not knowing whether I already have them. But the point is that the committee can't say all of the medical records are being gathered by the committee and ergo are privileged. The committee can't say all of the policies in the hospital are being gathered by the committee and are therefore privileged. The committee clearly can't say The counsel, it's one thing if you say, if you have a discovery request that says we want your policies on such and such. Yes. Let's call that request number one. And request number two says give us everything that the RCA committee considered. The first request is a freestanding request for policies. I would think that would be discoverable by just about anybody's interpretation. But then by the same token, if the RCA committee considered let's go so far as to say all of the policies in the hospital under that, it would not be discoverable. Right? Right. And that's again going back to the balance that I spoke about, that's the reason why the committee can't simply suck up everything. Sure. But if you wanted to get in the minutia of a certain policy relative to when certain indicators indicate a patient presents with the possible diagnosis of sleep that would have nothing to do with this particular root cause analysis committee. You could ask for any of those policies, couldn't you? And you could ask for results that may have any results that came out of this. We want them. You get those. And I did. Okay. And I would point out How would you not get the policy that I'm talking about? And I would point out to the panel that there had been no results produced, although clearly any such documents would be covered by our discovery request. But if you wanted to And I have done. All right. And again, as I would point out. Has there been any suggestion to that request that we don't, we're not going to give you this because this is something that we considered in our root cause analysis committee? No. What I am saying is, it is advocates' burden to show that, and the way that they show it is clearly set out in the court, in the case law, that the only use of these documents was for quality assurance purposes. That means before and after. To whom it was distributed, not in the affidavit. So again, even if the affidavit was actually sufficient, even if it was timely, even if it was proper, it doesn't meet their burden. Is there any information that you were, that would have been considered by the RCA that you could not have also independently asked for in a separate discovery request? Again, I met a disadvantage because I don't know what the documents are. And part of that is because I believe there is still an insufficient level of specificity as to what the documents are. Minutes, for example, would clearly be something that, you know, the label alone is probably enough to establish the privilege. As to every other category here, the label alone is not enough. But with regard to... But we have them all here. So that's part of our de novo review if we decide that is the standard. And even if it's the use of discretion, we still have them here to review them. The point was also brought up several times about thought processes of the committee. Again, the case law absolutely talks about that. I'm not contesting, obviously, that the thought processes of the committee are part of what the Medical Studies Act is intended to protect. But if we simply say that the inclusion of any sort of document in quality review records wherever they originated and whatever else they're used for are automatically privileged, we're going to swallow up the rule again. Any piece of paper that any committee looks at, whatever the purpose was before, to whomever it's distributed after, and we don't know because Advocate did not show Judge Callahan that and hasn't shown this panel that, we cannot say that that document is privileged just because the plaintiff might be able to guess at the thought processes of the committee. That's not consistent with... You know, under Anderson, it's really kind of an either-or test, isn't it? They can either, the hospital can either submit the materials for an in-camera inspection or they can submit an affidavit setting for it, sufficient facts to establish the applicability of the privilege. So there's no absolute requirement that Ms. Stern ever provide that affidavit, is there? There is not. But if Advocate wishes to meet its burden, then Advocate has the avenue of a proper privilege law that says, for example, who wrote this document? When was it written? To whom was it distributed? From whom was it distributed? What is Ms. Stern's job? Is she a patient safety manager? Certainly that doesn't automatically equate to everything she does. Is that the basis of Judge Callahan's ruling, is that this privilege law was insufficient? Or did he, in fact, go through the documents and say, this is quality assurance, that's not... We really have no idea what the basis of his ruling was, do we? Specifically as to each page, we do not. We do know that he reviewed the documents and determined that some of them were... Because of looking at them, part of the quality review process and only part of the quality review process. Where does it say that? It doesn't. It doesn't say that anywhere. So is it in fact how we're advocating today that the affidavit of Ms. Stern just doesn't have enough information? Is that the basis of his ruling? Because then couldn't we remand it and request more definitive ruling on this? Your Honor, it couldn't be the basis of his ruling because it was not provided to him prior to November 12th. The basis of his ruling was the documents themselves. So thank you, you're helping me to gel. There's a fundamental difference between saying or at least thinking in your head that the party seeking to assert the privilege has failed to carry their burden and saying as a matter of law these documents are privileged or not privileged. I believe advocate is arguing that he rules as a matter of law which is why he's asking us for a general vote review. Why is he wrong about that? He's wrong about that because the judge didn't order all of the documents to be produced. But did he rule as a matter of law or did he maybe tacitly say you didn't do enough to convince me that these fall within the privilege which would be more on a factual level.  It was clearly a factual ruling, Judge. And the reason that it's clearly a factual ruling is because he reviewed the documents and made the ruling after reviewing the documents. Had he made the ruling as a matter of law based on the labels that advocate has offered then it might be reasonable to assume that it's a de novo review because he was making as counsel suggested a decision that recommendations are never privileged or that medical records are never privileged. So the mere fact that he was reading pieces of paper means it was a factual determination? I believe, Judge, that in terms of assuming that Judge Callahan acted in a logical manner, it is only logical to conclude that he reviewed the documents themselves came to the conclusion that they did not meet their burden and that the documents themselves did not on their face establish the burden that advocate bears to show that the documents were only for quality assurance purposes. But what about his finding that the journal articles were not subject to the privilege? That's clearly against Anderson's finding. Would you agree with that? I don't disagree that because we met Anderson that journal articles are never privileged. Clearly sometimes they are. But again, it's not even Anderson doesn't make it just a magical labeling process that we say it's in our quality assurance files and that's really what we have from his turn. How were they generated? Where were they gathered from? With whom were they shared? What was the purpose that they were used for, if any, besides quality assurance? Advocate knows how to say these things. The case law makes it very clear that that's their burden and the general rules that apply to us all make it very clear that any privilege, including this very important privilege, is an exception to the general rule of discovery. Advocate initially denied that the documents existed and I would submit that if they were so sure they were privileged that they probably would have followed the proper procedure. It's very difficult for me to imagine how either Advocate or its attorneys could have been unaware of this proceeding when the doctor defendants knew that it had taken place and obviously Advocate conducted it. So we certainly have that point and again Excuse me, just one last question. When did the amended privilege log come into play? The amended privilege log was submitted what happened to try to simplify it and answer the Court's question I had pointed out many deficiencies in the privilege log that was submitted, including the fact that it didn't even match up with the page numbers on the documents. Okay, but like the first amended entry is the root cause analysis workbook meeting one initiated and created after April 13th through April 26th by an RCA committee exclusively for use by the RCA committee during the initial RCA meeting conducted on April 26th for the purpose of internal quality control and improvement of patient care, which includes workbook cover sheet, meeting agenda, participant list are you suggesting that those things are something that you're entitled to? PSA details, grant notification vitals, timeliness of certain care meeting attendance, sign in without seeing the documents I can only suggest that Here's the things that are some of the things Okay, I just wanted to know when that came into play What I would say to that too, Judge is, you know, exclusively used by the committee Again, it's not even clear. Of course it was exclusively used by the committee during the committee proceedings That's not the issue. What was the purpose of What was it used for before? What was it used for after? Advocate knows very well that those are pertinent questions and terribly important to striking the proper balance There's every reason to believe that Judge Calahan ruled based on the evidence that Advocate presented to him prior to November 12th and that it was not manifestly against the weight of that evidence Even if the court were to conclude it was it was a ruling as a matter of law Again, he's the one who was submitted certain information by Advocate and it was insufficient Thank you, Counsel. Thank you very much We have a brief rebuttal Counsel suggests that there are a lot of things that are clear in this case If everything was so clear, we probably wouldn't be here But putting that aside She indicates that the burden was not met by Advocate I just looked at what was stated in Amy Stern's affidavit and she says in paragraph 7 She begins with following the initial ruling along with other members of the RCA committee researched and gathered information identified as required by the committee to use during its deliberations So clearly these documents were gathered because the committee wanted them They were supplied to the committee and they considered them She then goes through every page practically every page that was order produced by Judge Callahan and explains this was gathered solely for the use of the committee or it was generated by the committee Those documents then used by the committee All of those documents are privileged under the Act She ends with paragraph 16 Counsel, how do we know that the judge did not come to the conclusion that an insufficient factual foundation was laid for this, that it just wasn't What he read in that affidavit just wasn't enough to convince him that the privilege applied Not a legal ruling per se, maybe in part legal but there's a factual component to this, you know, was it actually reviewed and you could reject it Tell me if you disagree, you could reject a claim of privilege for two different reasons You could find that it was not reviewed which I don't think there's any reason that he's thought that here or just you didn't do enough to prove that it was and if it was that latter thing, that's a factual finding that we have to defer to, isn't it It's assuming a lot of things that unfortunately do not appear in the record I have to assume that Judge Callahan was uncomfortable with the terms of his order and it did not mention the findings of fact that he had in fact reached that he said, I'm not going to sign this order because it's not consistent with my ruling However, he did sign this order and it says the documents numbered as follows are found not to be privileged under the Medical Studies Act That's a question of law, there's no factual finding there That doesn't have to be a question of law, does it He can't be privileged under the Act because he found an insufficient factual presentation was made to convince him that the He doesn't have enough information to fit it into the Act He doesn't think there was enough evidence, for example that the committee exclusively relied on it or that it was gathered in a certain way If he did, we don't know We'd have to read that into the court What do we do with that? What if we come to the conclusion that we don't know what the judge did? What does that do to the outcome of the case on appeal? I would suggest that this court then should look at the documents that were presented in a general fashion I don't think that there would be a basis for the manifest of the evidence analysis because we don't know what the findings of fact were so we don't know what you'd be refuting Would it be appropriate then to remand the case and ask Judge Callahan to make those findings of fact clear? That would be within the purview of the powers of this court Certainly I would ask this court to perform its de novo review as has been done in other cases such as Anderson, Kovalovich and Roche, I think, applied a de novo review Certainly there are other cases out of this district that have done a manifest way of the evidence or an abuse of discretion analysis but the orders in those cases were different and they did indicate those findings of fact that aren't present here One last thing that I did want to mention is with regard to the interrogatory answers they were amended around the time of the July 2015 order by the circuit court to more clearly reflect what was known to the hospital and avoid that previous discussion that Justice Burke brought up during the argument If there are no other questions I ask you to reverse and thank you very much for your time Thank you counsel Thank you both attorneys It's a very interesting case Well argued today We will take it under advisement We are going to take a short recess now